UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS VALENTINE,<br><br>     *Plaintiff*,<br><br>  v.<br><br>WASHINGTON NATIONALS BASEBALL CLUB, LLC, et al.,<br><br>     *Defendants*. | Civil Action No. 22-1299 (TJK) |

## MEMORANDUM OPINION AND ORDER

In May 2021, the Washington Nationals ejected Thomas Valentine from Nationals Park for not wearing a face mask in compliance with the Nationals' COVID-19 policies. Valentine claims he has a disability that prevented him from wearing one, and so he sued Defendants for violating the American with Disabilities Act ("ADA") and the District of Columbia Human Rights Act ("DCHRA"). Defendants move to dismiss all counts for failure to state a claim. For the reasons discussed, the Court will grant the motion as to the former claims but deny it as to the latter.

**I.   Background**

According to the operative complaint, Defendants Washington Nationals Baseball Club, LLC and Washington Nationals Stadium, LLC operate Nationals Park. ECF No. 9 ("Compl.") ¶¶ 8–9. On May 5, 2021, Valentine visited the park to attend a game. *Id.* ¶ 11. At that time, to comply with District of Columbia Mayor's Order 2020-080 related to COVID-19, Defendants enforced a mask mandate on all attendees. *Id.* ¶ 13. One exemption in the Mayor's Order, however,

provides: "Wearing a mask is not required when . . . [a] person is unable to wear a mask due to a medical condition or disability." *Id.* ¶ 15 (quoting Mayor's Order 2020-080).

Valentine did not wear a mask at the game because, he alleges, he "is a person with a disability within the meaning of the ADA and DCHRA" and is "unable to wear a mask due to his disability." Compl. ¶ 14. But Nationals Park personnel allegedly "demanded" he wear one several times. *Id.* ¶¶ 17–19. During each confrontation, he responded that he had a medical condition and, because of it, could not wear a mask. *Id.* Valentine declined to disclose the nature of his medical condition when asked. *Id.* ¶ 18. The Nationals' Vice President of Safety and Security eventually told Valentine that, unless he wore a face mask or face shield, he would be ejected. *Id.* ¶¶ 19–20. Valentine alleges the Vice President "did not offer any reasonable accommodation." *Id.* ¶ 20. Ultimately, Defendants ejected Valentine. *Id.* ¶ 23.

Valentine alleges that afterward, he felt "embarrassment and humiliation" for being "treated like a criminal and kicked out of a baseball game because of his disability." Compl. ¶ 24. He tried to resolve his grievances without resorting to a lawsuit. *Id.* ¶ 25. Defendants responded by inviting Valentine to come back to Nationals Park for "a game of [his] choosing" at "any time" during the 2021 regular season and assured him that his experience on May was "a one-time occurrence." *Id.* Valentine also alleges that "there is currently no mask mandate in place at Nationals Park." *Id.* ¶¶ 30, 35, 41.

Evidently, the Nationals' proposed resolution proved unsatisfactory and so Valentine, representing himself, sued Defendants for three counts under the ADA and one under the DCHRA. Under the ADA, he alleges violations for (1) denial of access under 42 U.S.C. § 12182(b)(1)(A)(i); (2) unequal treatment under 42 U.S.C. § 12182(b)(1)(A)(ii); and (3) failure to modify policies under 42 U.S.C. § 12182(b)(2)(A)(ii). Compl. ¶¶ 26–41. And he alleges Defendants violated the

DCHRA for denying him, a person with a purported disability, with "full and equal enjoyment" of Nationals Park's goods, services, facilities, privileges, advantages, and accommodations. *Id.* ¶¶ 42–48. Valentine seeks a declaration that Defendants violated the ADA and DCHRA. *Id.* ¶ 49(a). He also seeks an injunction requiring Defendants modify their policies, practices, and procedures, including those about face masks, to comply with the ADA and DCHRA. *Id.* ¶ 49(b). And he seeks compensatory and punitive damages along with his costs and attorneys' fees. *Id.* ¶ 49(c)–(d).

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 19. They raise three main arguments. First, they argue Valentine's ADA claims must be dismissed both because the ADA does not permit money damages and because his claims for injunctive relief are moot. ECF No. 19-2 at 6–8. Second, they say that all his claims are barred by the applicable statute of limitations. *Id.* at 3–4. Third, they contend that Valentine has failed to allege facts sufficient to show he suffers a "disability" as defined by the ADA and DCHRA. *Id.* at 5–6.

**II.   Legal Standards**

Federal courts are courts of limited jurisdiction, so it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994).[1] And courts "have an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C.

---

[1] Defendants' mootness argument should have been brought under Rule 12(b)(1) instead of Rule 12(b)(6) "because mootness itself deprives the court of jurisdiction." *Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017). And although Defendants do not "dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court may analyze subject-matter jurisdiction *sua sponte*." *Bell v. U.S. Dep't of Health & Hum. Servs.*, 67 F. Supp. 3d 320, 323 (D.D.C. 2014). Thus, the Court treats Defendants' mootness argument under Rule 12(b)(1).

Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Thus, to avoid dismissal under Rule 12(b)(1), "the plaintiff bears the burden of proving that the Court has subject matter jurisdiction." *United States ex rel. Bid Solve, Inc. v. CWS Mktg. Grp., Inc.*, No. 19-cv-1861 (TNM), 2021 WL 4819899, at *2 (D.D.C. Oct. 15, 2021). In considering its subject-matter jurisdiction, a court is not limited to the allegations in the complaint and may consider materials outside the pleadings, but the court must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (alteration in original) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017). To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to state a plausible claim to relief on its face. *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 343 (D.C. Cir. 2018). In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint in the plaintiff's favor and grant the plaintiff the benefit of all reasonable inferences. *See Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). But mere conclusory statements of misconduct, even from a pro se plaintiff, are not enough to make out a cause of action against a defendant. *Kretchmar v. FBI*, 32 F. Supp. 3d 49, 54 (D.D.C. 2014).

Additionally, when, as here, a plaintiff proceeds pro se, the complaint is "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In practice, that means "courts assess a *pro se* complaint 'in light of all filings, including filings responsive to a motion to dismiss.'" *Gallo v. District of Columbia*, No. 21-cv-03298 (TNM), 2022 WL 2208934, at *3 (D.D.C. June 21, 2022) (quotation omitted); *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C.

Cir. 2015) ("[The defendant] will suffer no prejudice by allowing [the pro se plaintiff] to, in effect, supplement his complaint with the allegations included in his opposition.").

**III.    Analysis**

Valentine raises claims under two statutory provisions—the ADA and DCHRA. And Defendants move to dismiss them all. The Court finds that Valentine's ADA claims must be dismissed for lack of standing but that he has adequately stated a DCHRA claim.

**A.    Valentine Lacks Standing to Bring His ADA Claims**

Defendants argue that Valentine's ADA claims must fail for two reasons. First, Valentine cannot seek money damages under the ADA. ECF No. 19-1 at 6–7. Second, his remaining ADA claims for declaratory and injunctive relief must fail as moot. *Id.* at 7–8; ECF No. 27 at 6–10. The Court agrees that Valentine's ADA claims cannot survive, but it reaches that conclusion on standing, not mootness, grounds.

Defendants are correct that Valentine cannot seek money damages under ADA. The remedies available under the ADA are "exclusive" and "do not include money damages." *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 5 (D.C. Cir. 2000) (discussing 42 U.S.C. §§ 2000a-3(a) and 12188(a)(1)). But Valentine's complaint appears to cabin his money-damages request to his DCHRA claim, Compl. ¶ 48, and his ADA claims seek only a court order that Defendants "make modifications to their policies, practices, and procedures" under the ADA, *id.* ¶¶ 30, 35, 41. Thus, the Court construes Valentine's ADA claims to seek only declaratory and injunctive relief—but, to the extent they seek money damages, the Court dismisses them for failure to state a claim.

As for the declaratory and injunctive relief Valentine seeks under the ADA, Defendants argue those claims are moot because the challenged mask mandate has been discontinued, and so Valentine cannot show a likelihood of future harm. ECF No. 19-2 at 7. Although Defendants

argue that "plaintiff lacks standing," their argument focuses on mootness. *See id.* at 7–9. And responding in kind, Valentine invokes the "voluntary cessation" exception to mootness. ECF No. 21 at 7–8. In the end, as described below, the Court finds that Valentine's ADA claims for declaratory and injunctive relief fail for lack of standing, rather than mootness.[2]

"Article III of the Constitution limits the power of the federal judiciary to the resolution of 'Cases' and 'Controversies.'" *Maguire v. FBI*, 236 F. Supp. 3d 147, 149 (D.D.C. 2017). Thus, "[a] party invoking federal court jurisdiction must show they meet the 'irreducible constitutional minimum' of Article III standing." *Nat'l Cap. Presbytery v. Mayorkas*, 567 F. Supp. 3d 230, 240 (D.D.C. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). That constitutional minimum requires that a plaintiff show an injury in fact, causation, and redressability. *Spokeo*, 578 U.S. at 338. And for standing, the question of "whether a case or controversy exists" is asked "at the time the litigation is commenced." *Brookens v. Am. Fed'n of Gov't Emps.*, 315 F. Supp. 3d 561, 568 (D.D.C. 2018) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).

This case turns on the standing doctrine's injury-in-fact requirement—that the alleged injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). When a party, like Valentine, seeks declaratory or injunctive relief, "past injuries alone are insufficient to establish standing"; instead, a plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011); *Jibril v. Mayorkas*, 20 F.4th 804, 812 (D.C.

---

[2] The Court construes Valentine's DCHRA claim to seek only damages. *See* Compl. ¶ 48. But to the extent he seeks declaratory or injunctive relief under the DCHRA, the Court dismisses those claims for lack of standing for the same reasons it dismisses like claims under the ADA.

Cir. 2021) (For "claims seeking prospective relief, a plaintiff must show a threatened injury that is certainly impending or a substantial risk that the future harm will occur.").

To support his claims for declaratory and injunctive relief, Valentine must therefore show that when he filed his complaint, he either suffered an "ongoing injury" or faced an "immediate threat of injury." *Dearth*, 641 F.3d at 501. He cannot do so. He concedes in the complaint that by that time, Defendants had ended the challenged mask mandate policy. Compl. ¶¶ 30, 35, 41.

Valentine's allegations that Defendants *could* reinstate a mask policy do not change this conclusion because they fail to show an "immediate threat of injury." *Dearth*, 641 F.3d at 501. The complaint alleges that "the D.C. government has a history of declaring mask mandates with little notice." Compl. ¶¶ 30, 35, 41. And in his opposition, Valentine asserts that the "D.C. government and the Nationals *may* seek to re-institute a mask mandate in the future" and that "[i]t is *entirely possible* that [COVID-19] case numbers in D.C. will rise," leading "the mayor and/or the Nationals" to "reinstitute mask mandates." ECF No. 21 6–7 (emphases added). Simply put, these allegations fail to move his alleged injury from conjectural or hypothetical to actual or imminent. *Lujan*, 504 U.S. at 560.

Valentine's main response is that Defendants voluntarily ceased to enforce their policy, which, he contends, preserves the Court's jurisdiction. ECF No. 21 at 7–8. But this "voluntary cessation" exception to mootness does "not extend to standing." *Brookens*, 315 F. Supp. 3d at 568 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190–91 (2000)). As the Supreme Court has explained, the "presumption of [future] injury when the defendant has voluntarily ceased its illegal activity in response to litigation" applies "to refute the assertion of *mootness* by a defendant who, *when sued* in a complaint that alleges present or threatened injury, ceases the complained-of activity." *Steel Co. v. Citizens for a Better Env't*, 523 U.S.

7

83, 109 (1998) (alteration in original) (emphases added). An allegation that a defendant has voluntarily ceased an activity that causes harm *before a lawsuit begins*, however, is no "substitute for the allegation of present or threatened injury upon which initial standing must be based." *Id.* Thus, even assuming Defendants injured Valentine when it ejected him for not a wearing a mask, he still must establish an injury to support standing for the prospective relief he seeks. That Defendants ceased the allegedly unlawful conduct before Valentine filed his complaint does not eliminate that burden.

For all these reasons, Valentine has failed to satisfy his burden to show standing for the requested declaratory and injunctive relief related to his ADA claims. The Court will therefore dismiss those claims for lack of subject-matter jurisdiction under Rule 12(b)(1).

### B.     Valentine Has Adequately Alleged a DCHRA Claim

Defendants move to dismiss Valentine's DCHRA claim for failure to state a claim under Rule 12(b)(6) both because that claim is barred by the one-year statute of limitations and because he has not adequately alleged a disability under the DCHRA. The Court disagrees. Valentine timely filed his complaint. And in his sealed opposition to Defendants' motion to dismiss, Valentine sufficiently alleges his disability. Thus, the Court will deny Defendants' motion to dismiss Valentine's DCHRA claim.

#### 1.     Statute of Limitations

For a private cause of action under the DCHRA to be timely, it "shall be filed . . . within one year of the unlawful discriminatory act." D.C. Code § 2-1403.16(a). Defendants ejected Valentine on May 5, 2021. Compl. ¶¶ 11, 23. Thus, to bring a viable claim under the DCHRA based on that ejection, Valentine had to file his lawsuit by May 5, 2022. But his initial filings were

docketed on May 11, 2022, *see* ECF Nos. 1–2, 4–6, several days later.  So, Defendants argue, Valentine's DCHRA claim is time-barred.  ECF No. 19-2 at 3–4.  But there is more to the story.

"In the District of Columbia, statutes of limitations," such as D.C. Code § 2-1403.16(a), "are strictly construed in accordance with their terms." *400 E St. SW, LLC v. Chevron U.S.A. Inc.*, No. 21-7075, 2022 WL 2677091, at *2 (D.C. Cir. July 12, 2022) (quoting *Atiba v. Wash. Hosp. Ctr.*, 43 A.3d 940, 941 (D.C. 2012)).  Under federal and local rules, electronic filing by pro se litigants is permitted if the Court allows it.  Fed. R. Civ. P. 5(d)(3)(B)(i); *see* LCvR 5.4(b)(2).  Without electronic filing privileges, "[a] party appearing *pro se* shall file with the Clerk and serve documents in paper form and must be served with documents in paper form."  LCvR 5.4(e)(2).  Further, while a party generally may not transmit a document to the Clerk via email, a party may do so "with express leave of Court."  LCvR 5.1(b).

Under this framework, the Court finds that Valentine's complaint was timely filed.  In his opposition, Valentine explains that on May 4, 2022, he "attempted to electronically file" but learned that as a pro se litigant he could not do so without permission.  ECF No. 21 at 2; *see also* Minute Order of June 27, 2022 (later granting Valentine CM/ECF privileges).  So the next day, he called the Clerk's Office for help.  ECF No. 21 at 2.  The Clerk's Office directed him to email his filing to a Court intake email address.  *Id.*  Under these circumstances, the Court construes this direction as "express leave of Court" to do so.  *See* LCvR 5.1(b).  Thus, as instructed, Valentine emailed his "civil cover sheet using a pseudonym, complaint using a pseudonym, motion to use the CM/ECF system, notice of address under seal, and summons under seal" to the Court's intake email address on May 5, 2022.  *Id.* at 2 n.2.  And even though the Clerk's Office did not *docket* these materials until May 11, 2022, that does not mean they were not timely *filed* on May 5, as described above.  ECF Nos. 1–2, 4–6.

9

There is one other part to the story that warrants mentioning, given the reason that Valentine's complaint was not docketed immediately. Valentine represents that his complaint was not docketed on May 5, 2022, because the Clerk's Office instructed him to move to proceed under a pseudonym. ECF No. 21 at 2 n.2. He emailed that motion on May 11, *id.*, the same day his materials were docketed, ECF Nos. 1–2, 4–6. Some authority suggests that under these circumstances, a court lacks jurisdiction over a case until such a motion is filed, and that lack of jurisdiction could delay the effective filing date. *See Cody v. City of St. Louis*, No. 4:17-CV-2707-AGF, 2022 WL 1202354, at *2 (E.D. Mo. Apr. 22, 2022) (outlining the "split" on the issue). The D.C. Circuit has yet to weigh in on this question. *See Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 95 (D.D.C. 2015) ("Although the rule in some circuits is that a failure to obtain leave to proceed anonymously deprives the Court of subject matter jurisdiction to adjudicate the merits of the claim, . . . this Circuit has no such rule . . . ."). The Court finds the Fourth Circuit's view— that "a plaintiff's failure to disclose her name to the court at the time she files a complaint is immaterial to whether that civil action qualifies as a case or controversy"—persuasive and adopts its reasoning here. *See B.R. v. F.C.S.B.*, 17 F.4th 485, 494 (4th Cir. 2021). Thus, Valentine's failure to include a motion to proceed pseudonymously with his complaint on May 5 did not deprive this Court of jurisdiction and his case was properly filed as of that date.

In any event, the rule the Fourth Circuit rejected—that "federal courts lack jurisdiction over . . . unnamed parties, as a case has not been commenced with respect to them"—would not apply to this situation anyway. *See Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989). In *Gibbs*, the Tenth Circuit so concluded because the plaintiffs there had proceeded anonymously without permission and did "not otherwise disclose[] their identities to the court or to the defendants." *Id.* But courts in this district have

persuasively reasoned that jurisdictional issues for failure to move to proceed pseudonymously only arise, if at all, when the court is unaware of the plaintiff's identity and thus cannot assess its own subject-matter jurisdiction.[3]  In this case, Valentine disclosed his identity to the Court on May 5 by filing an "Exhibit of Identity" listing both his name and address.  *See* ECF No. 6; *see also* ECF No. 21 at 2 n.2.  Thus, even under the reasoning in *Gibbs*, there is no jurisdictional bar to the Court's conclusion that Valentine timely filed his complaint on May 5, 2022, before the DCHRA's one-year statute of limitations expired.

### 2. "Disability" Under the DCHRA

Even if Valentine timely filed his DCHRA claim, Defendants move to dismiss because Valentine has failed to adequately allege his disability under the DCHRA.  The DCHRA provides that it "shall be an unlawful discriminatory practice . . . for a discriminatory reason based on the actual or perceived . . . disability . . . of any individual . . . [t]o deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations."  D.C. Code § 2-1402.31(a)(1).  The DCHRA elsewhere defines a "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment."  D.C. Code § 2-1401.02(5A).

Defendants here argue that Valentine's complaint fails to identify or describe his alleged disability or allege "any facts that, if true, would show the alleged impairment 'substantially limits'

---

[3] *Compare Bernabei*, 85 F. Supp. 3d at 97 n.6 ("In this case, perhaps unlike others involving pseudonymous parties, Defendants and the Court know who the Plaintiff is and can adequately address the existence of subject matter jurisdiction which, other than the issue of the Plaintiff's name, is not in doubt."), *with Klayman v. Obama*, 125 F. Supp. 3d 67, 90 (D.D.C. 2015) (dismissing claims brought by anonymous plaintiffs because it could not assess subject-matter jurisdiction).

11

a 'major life activity.'" ECF No. 19-2 at 5–6. True, Valentine's complaint does not state the nature of his disability, alleging only that he has a "disability within the meaning of the ADA and the DCHRA."[4] But the Court must consider Valentine's opposition to the motion to dismiss because he is pro se. *Brown*, 789 F.3d at 152. Defendants contend that, even accounting for the opposition, Valentine still fails to state a claim as he has not explained how his alleged disability prevented him from wearing a face *shield* even if he could not wear a face *mask*. ECF No. 27 at 4. Defendants misread Valentine's filings.

In ample detail, the sealed portion of Valentine's opposition clarifies the nature of his alleged disability and why that disability prevents him from wearing face masks. ECF No. 24 at 4–5. Valentine's allegations specifically show how his alleged disability poses substantial limitations on his "major life activities." D.C. Code § 2-1401.02(5A); *see* ECF No. 24 at 4. And he ties the challenges he faces wearing face masks directly to those limitations. ECF No. 24 at 4–5. At the motion-to-dismiss stage, these allegations are enough to allege a disability in support of Valentine's DCHRA claim. Indeed, aside from arguing that the Court may not consider Valentine's supplemental allegations in his opposition—an argument this Circuit's precedent forecloses—Defendants do not contest that the entirety of Valentine's allegations suffice to allege a disability under the DCHRA.

Instead, Defendants argue that Valentine has failed to allege how his disability prevented him from wearing a face *shield*. ECF No. 26 at 4–5. Defendants offered Valentine a face shield instead of a face mask when he visited Nationals Park. *Id.* at 4 (citing Compl. ¶¶ 19, 20, 39). Thus, Defendants say, despite Valentine's additional allegations in his opposition, his DCHRA claim

---

[4] Valentine represents that he thought he had to file a public complaint and, to keep his medical information under seal, did not include details of his medical condition in it. ECF No. 21 at 3–4.

fails because he has failed to allege that his disability prevented him from wearing a face shield. *Id.* at 4–5.

On this score, Defendants overlook a key allegation in the complaint. Addressing the face shield Defendants offered, Valentine alleges that he "also cannot wear [one] due to his disability for the same reasons" he cannot wear a face mask. Compl. ¶ 39. Defendants argue this is a "conclusory assertion" that "standing alone" cannot state a claim. ECF No. 27 at 5 n.3. But the Court does not read this allegation "standing alone." At this stage, the court must draw all reasonable inferences in Valentine's favor, *Hettinga*, 677 F.3d at 476, and must consider this allegation "in light of *all* filings, including filings responsive to a motion to dismiss." *Gallo*, 2022 WL 2208934, at *3 (emphasis added) (quotation omitted). For these reasons, Valentine has plausibly alleged that the reasons his disability prohibits him from wearing a mask also prohibit him from wearing a face shield. Thus, Valentine has adequately alleged a disability under the DCHRA.

## IV. Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Defendants' motion to dismiss, ECF No. 19, is **GRANTED IN PART** for lack of subject-matter jurisdiction as to Valentine's ADA claims and **DENIED IN PART** as to Valentine's DCHRA claim.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 20, 2023